```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF KANSAS


JOHN A. DOE,                          )
                                      )   Case No. 17-2255
   Plaintiff,                         )
                                      )
   v.                                 )   Kansas City, Kansas
                                      )   Date:  1/4/2023
MARK E. WISNER and                    )
UNITED STATES OF AMERICA,             )
                                      )
   Defendants.                        )
...........................................

                 TRANSCRIPT OF TELECONFERENCE

          BEFORE THE HONORABLE DANIEL D. CRABTREE
             UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:


For the Plaintiff:

Terri D. Lowdon                    Aaron C. McKee
Mark H. Wissehr, PC                McKee Law, LLC
507 Francis Street                 222 South Cherry Street
Suite 208                          Olathe, KS 66061
St. Joseph, MO 64501


For the Defendant United States of America:

Virginia Jackson Elliott
Chris Benson
United States Department of Justice
P.O. Box 888
Washington, DC 20004-0888




     Proceedings recorded by machine shorthand, transcript
  produced by computer-aided transcription.
```

1          (Court called to order.)
2              THE COURT:  Good afternoon, everyone.  It's 17-25 --
3    I'm sorry, let me start over -- 17-2255, and this impromptu
4    status conference, as I understood, is requested from the
5    parties.  So tell me who's on the line from the plaintiff's
6    side.
7              MR. LOWDON:  Terry Lowdon.
8              MR. MCKEE:  Aaron McKee.
9              THE COURT:  And I think I heard a second name, but I
10   wasn't sure I heard it right.
11             MR. MCKEE:  For plaintiff, Terry Lowdon and Aaron
12   McKee.
13             THE COURT:  All right, I did hear it right.
14             And then on the defendant's side, who do I have on the
15   line?
16             MR. ELLIOTT:  Good afternoon, Your Honor, Virginia
17   Elliott.
18             THE COURT:  Anybody with you, Ms. Elliott, or just
19   you?
20             MR. ELLIOTT:  No.
21             MR. BENSON:  Chris Benson as well, Your Honor.
22             THE COURT:  All right.  So I don't know very much
23   about why we're together.  I have received and read the e-mail
24   from Mr. McKee that was -- looks like 3:56 Central time this
25   afternoon asking if I was available for a phone conference to

1   try and get the case wrapped up.  Obviously I am.  I'm here.
2   I'm not sure what I can do for you, but I'll turn it over to
3   you all.  It's your case.
4           MR. MCKEE:  Judge, this is Aaron.  As far as from
5   plaintiff's perspective, there was a -- a stipulation from the
6   government, which is intended to be the settlement agreement.
7   And -- and Terry Lowdon -- Plaintiff Ken Jones, John A. Doe, he
8   signed it on Monday the 19th.  Terry Lowdon, although she
9   wasn't -- and I don't want to speak for her, you know, she
10  wasn't -- didn't understand why the -- the attorneys were being
11  required to sign it, but he did -- she did on December 20th,
12  and then sent it to USA's counsel.
13          And USA is then taking the position that I -- that I,
14  as counsel, have to sign this settlement agreement.  And I gave
15  a few examples why, but -- but bottom line is, you know, I'm
16  not a party to the case.  And -- and what advice I did or did
17  not give would be attorney-client privilege.  But one of the
18  biggest was due to being set for trial.
19          You know, Terry and I are co-counsel, and there's a
20  number of reasons why that happens, but one, you know, here is
21  she has the relationship with the client.  He trusts her.  You
22  know, he's a victim of rape and he -- you know, he trusts her.
23          And so, you know, it's my understanding -- and I don't
24  want to get into it because I wasn't there, but -- but -- and
25  she can speak to this if necessary, but she sat down with

1   plaintiff and, you know, went over it, this agreement, and he
2   made the decision to -- to sign it and agree to the -- to the
3   terms.  And Terry signed it and sent it.  And it just -- it's
4   not going through.  They're claiming because -- they're saying
5   I have to sign it.
6           I've asked for -- I've done some -- I've done research
7   and I can't find anything that says that I have to.  I asked
8   USA's counsel for anything that says that I have to, and they
9   say, "Well, there's a blank there for your name."  Well, okay,
10  but so that's -- that's -- I guess I've said more than I
11  intended to, but that's -- that's what's happening.
12          THE COURT:  Well, I'm not -- I'm not altogether clear
13  what role do you think the court has in this discussion.
14          MR. MCKEE:  I don't -- I don't know.  I -- I just -- I
15  don't believe, as an attorney, and -- well, let's say this, on
16  a pleading, for example, or at least as far as I know, one of
17  -- one of the attorneys to sign their name.  So you can have a
18  signature block with multiple attorneys, but the -- you know,
19  one person signs it.
20          And I just want -- I guess I don't know what the court
21  can necessarily do, but, you know, here's -- that's the issue
22  is that the USA is saying -- you know, they sent an e-mail to
23  the court saying they settled, but the issue is they really
24  want me, as, you know, a plaintiff's attorney, to sign it, and
25  I've said I'm not going to sign it.  And I -- and I'm not going

1  to breach attorney-client privilege to say --
2          Well, I'll tell you, Terry was the one that, you know,
3  had -- that talked with him and so on about it, went through --
4  through it, I was not, and so there's that issue.
5          And I don't have to tell the defendant if, as an
6  attorney, I agree with it or I don't agree with it.  I mean,
7  it -- and so I -- all I can figure is we need to let the court
8  know.  And if we need to set a phone call, let's get it out
9  there because I don't know what else to do.
10         THE COURT:  Well, I don't either.  I don't -- I don't
11 have any -- the court doesn't have any power to wade into this
12 slop of uncertainty except that conferred by the Rules of Civil
13 Procedure.  And I don't find any provision, at least from the
14 short time I've had on the current record, that would confer
15 any power on me to do -- as the court to do anything.
16         So I guess I -- Mr. McKee, I come back to you.  I'm
17 not here to think for the parties --
18         MR. MCKEE:  Right.
19         THE COURT:  -- or to advise them.  In fact, I can't.
20 You either have a settlement or you don't.  But I do know this,
21 the courtroom is still reserved and I'm still available for
22 trial next week.
23         MR. MCKEE:  And, judge, I -- I agree with what you
24 said.  I haven't been able to find anything in which a judge
25 could compel an attorney, a non-party, to sign a settlement

1   agreement, I mean -- you know, and so -- and so I'm -- as I've
2   told the government, and I will tell you, is, you know, Terry
3   has the -- if it weren't for Terry, which she'll probably --
4   but if it weren't for Terry, I don't know that this case would
5   have settled if it weren't for plaintiff trust -- his trust in
6   Terry.
7           THE COURT:  This is -- this is -- none of this is my
8   business.
9           MR. MCKEE:  Okay.  Okay.  Fine.  Okay.  Sorry, judge.
10  I didn't know what else to do.
11          THE COURT:  I don't know of anything to do.  The
12  defendants, you've been quiet -- defendant, you've been quiet
13  through this.  I don't mean to not let you talk.  But my view
14  of this situation is the parties either have a settlement or
15  they don't.  And if they don't, I don't know of a way out of
16  the case without commencing the trial next week.
17          MR. BENSON:  Virginia, do you want to respond to that?
18          MR. ELLIOTT:  I mean, Your Honor, I hear what you're
19  saying about you don't know, you know, how much of this is your
20  business or not.  I would like to just say that, you know,
21  early this morning I e-mailed Aaron, plaintiff's counsel,
22  Mr. McKee, and said, you know, if there's a time that he would
23  like to talk, please let me know and I'll give him a call about
24  this, and the -- I didn't hear anything.  So I apologize for
25  jumping on this call sort of spontaneously.  We did not have a

1   chance to actually speak.  But, you know --
2              THE COURT:  Let me stop you.  Hold on just a second.
3              MR. ELLIOTT:  Sure.
4              THE COURT:  Let me make sure I understand the state of
5   play on this issue.
6              MR. ELLIOTT:  Sure.
7              THE COURT:  You have -- the defendant's counsel has
8   not -- you sent an e-mail to plaintiff's counsel this morning;
9   is that right?
10             MR. ELLIOTT:  That's correct.
11             THE COURT:  And in it you offered to get on the phone
12  and talk about this situation?
13             MR. ELLIOTT:  Yes.  I said, you know, it might be more
14  productive if you and I could speak.  If you have some time,
15  please let me know.
16             THE COURT:  And you -- your representation to the
17  court is you heard nothing back in response to that entry?
18             MR. ELLIOTT:  That's correct.
19             THE COURT:  Mr. McKee, is that a fair characterization
20  of the state of play on this?
21             MR. MCKEE:  Not exactly.  Let me -- let me -- let me
22  just -- I think you need a little more detail than is --
23             MR. LOWDON:  First of all, let me jump in real quick.
24  Your Honor, I was not a party of that e-mail.  I think that was
25  between Mr. McKee and -- and --

1           THE COURT:  Who's talking so -- I'm sorry, I don't
2    know the voice.
3           MR. LOWDON:  Terry Lowdon.  I'm sorry, this is Terry
4    Lowdon.  I wasn't a part of that e-mail, so I'll let Aaron
5    speak to that.
6           THE COURT:  Okay.
7           MR. ELLIOTT:  Let me jump in.  This is Virginia
8    Elliott one more time.
9           Terry, you might have missed it, but your -- your
10   e-mail is copied on what I sent.
11          MR. LOWDON:  Okay.  I didn't -- I didn't see it.
12          MR. ELLIOTT:  That's fine.  I just want to make sure
13   we're all on the same page.
14          MR. MCKEE:  Judge, this is Aaron McKee.  Let me -- let
15   me just back up then a little bit.  I had sent -- I'm pretty --
16   I sent an e-mail on December 23rd to the government's attorney
17   -- to USA's attorneys.  I had already told them that I wasn't
18   going to sign it and that I didn't believe that I -- that it
19   was necessary and so on.  And then I asked, "Okay, why is it
20   that you think I have to sign it?"
21          And they say, "Well, because there's a blank for your
22   signature."
23          I'm like, "Okay, give me legal authority."
24          But I -- I was sitting there on Friday, December 23 at
25   about five o'clock and I got an e-mail that was sent by the USA

1  to the court talking about this issue.  I wasn't asked if it
2  should be sent to -- you know, about this situation, what have
3  you, and -- and then it got -- it got sent.  So we have been
4  communicating about this issue.
5          And as far as, you know, an e-mail this morning, you
6  know, I'll tell you that -- that I saw the e-mail I think
7  mid-morning or so, 11:00-12:00-ish.  I don't even remember.
8  And so I began doing additional research other than what I
9  already had.  I then began drafting, you know, if necessary a
10 motion to enforce the agreement and so on, and -- and then I,
11 you know -- and that's not going anywhere.
12         I felt like I was cornered and I didn't have -- you
13 know, and Virginia is saying, well, I could have called her.
14 Well, Virginia has told us, and this is one of the problems
15 that we've had in this case, that she isn't the decision-maker
16 on these things.  So we were told months and months ago that we
17 had to sign this boilerplate agreement as is and that there was
18 no changes that could be made.  And so that's the state of
19 play, that's where we are.
20         She then sends an e-mail, I don't know, about -- it
21 was yesterday or this morning saying -- or last week she sends
22 me an e-mail I think to Terry.  I got it.  I don't know if I
23 got it from her or Terry, but, anyway, saying, "You know what,
24 I've run the -- I've run the agreement, you know, up the powers
25 that be and..."  You know, and so, I mean, Terry and I thought,

1   "Okay, fine.  We're done."
2           And so it wasn't until, you know, yesterday afternoon,
3   maybe this morning, and I'd exhausted the issue -- in fact, it
4   caused a lot of problems.  I mean, you know, we're trying to
5   protect the client.  We're trying to protect ourselves as
6   attorneys.
7           And any time that we talked about things like this
8   with Virginia she would say, "I'm not the person to make the
9   decision."  And so she couldn't even make the decision on the
10  20th or 21st or what have you about -- about whether there was
11  an agreement or not without running it up -- up the chain.
12          And so, I mean -- so that's -- I just -- I didn't want
13  to wait until tomorrow afternoon to be in a position, and so
14  that's why I decided I was just going to call the court and see
15  -- and see if we can get any help that way.
16          MR. BENSON:  Your Honor, this is Chris Benson.  Can I
17  jump in for a second --
18          THE COURT:  Sure.
19          MR. BENSON:  -- to respond to that?
20          So I have discussed this settlement with our director,
21  and it was he and myself that looked at the stipulation and
22  said we want Aaron to sign it because there's a blank on there
23  for his signature and because he signed 10 of these in other
24  litigation involving the same set of events and they're the
25  same stipulation, and so we were fairly surprised when he said

1    he wouldn't sign it.  And we had distributed this very
2    stipulation for this case in June to Mr. McKee and to
3    Ms. Lowdon, and Ms. Lowdon signed it, Mr. Jones signed it.  And
4    so it wasn't until December 23rd, as Mr. McKee is saying, that
5    we got an objection.  And we were taken, you know, by surprise
6    since the same stipulation had already been signed.
7            And Mr. McKee did raise issues with the stipulation
8    that had already been discussed with Ms. Lowdon, and we've been
9    trying -- Virginia was trying to get him on the phone to iron
10   it out.
11           I'm at a loss as to why we're on the phone.  And,
12   again, I apologize, Your Honor, that we're on the phone right
13   now, because you -- we weren't asked about setting up this
14   call.  And, you know, we can go back and think about it on our
15   end, but from our -- from my perspective that -- you know,
16   that's the issue.  We didn't realize this would even be a
17   question because it was not raised with us because this
18   stipulation was already distributed.
19           MR. MCKEE:  Judge, this is Aaron McKee.  Let me
20   respond real quickly.  They knew on the 20th or the 21st that I
21   wasn't going to sign it.  Virginia even sent me a text I think
22   was on that Wednesday.  So the 23rd wasn't the first notice of
23   it but --
24           THE COURT:  I'm going to stop you.  I can't -- I can't
25   adequately communicate how little interest I have in the back

1   and forth of your negotiations.  That's no place for a trial
2   judge to be.  So I've listened to you.  It sounds like -- first
3   of all, Mr. McKee, you don't have to sign anything.  I assume
4   your -- you and your client have bargained to receive some
5   consideration in exchange for resolving this plaintiff's
6   claims.  If you want that consideration, then you'll have an
7   agreement that allows you to receive it.  If you don't want
8   that consideration, then you don't.  I -- it's not my place to
9   tell you what you have to sign, particularly in the absence of
10  any motion asking the court to take action.
11          I wondered about, candidly, the wisdom of me getting
12  on the phone with you at this stage, but I thought I might be
13  able to assist you.  I don't think there's a thing for me to do
14  here.
15          So we are where we are.  It's a binary state for me.
16  There's either a settlement or there isn't a settlement.  If
17  there isn't a settlement, the trial setting was not vacated for
18  this very reason.  So if there's not a settlement, we'll start
19  the trial on Monday.
20          If you all work out your differences, then -- and
21  submit -- like I said, I understand that there's more involved
22  for the government to cut a check than there is for many
23  private companies or individuals, and I'm willing to allow some
24  time for that to happen, some reasonable period of time.  But
25  either the signatures are procured on the papers that have to

1   be filed to indicate so or not.  And if not, I'll see you
2   Monday morning.  And if they are, they are.
3           That's all I can think to do for you.  I don't have
4   any other power to resolve your disagreements with one another.
5           MR. MCKEE:  Judge, let me -- let me --
6           THE COURT:  Let me -- let me finish.
7           MR. MCKEE:  Sorry.
8           THE COURT:  And I'll just say to you, Mr. McKee, I
9   counsel you in the future, at least in the cases I'm involved,
10  that if you're invited to have a phone call with opposing
11  counsel before you involved the trial judge, I'd encourage you
12  to have that phone call.  I think you should have had it here,
13  but, again, that's neither here nor there.  I can't make you
14  have that phone call.
15          But what I can say to you is, if you want the
16  consideration you believe you were promised, then you work out
17  your differences and get there.  And if you don't want it, then
18  we'll have a trial.
19          MR. MCKEE:  Judge, and this is Aaron McKee again, just
20  because it's my understanding we're on the record -- if we're
21  on the record, I want to respond.  If not, then I don't need
22  to.
23          THE COURT:  We are on the record.
24          MR. MCKEE:  Okay.  Is -- you heard it's just
25  Mr. Benson had to talk to a director about this whole signature

1   issue, and so it just reinforces what I'd already said is that
2   Virginia was -- was -- she couldn't do anything.  And her
3   e-mails, you know, at the bottom of it, which you don't have
4   because, you know, I -- I really -- it comes to -- the parties
5   are the plaintiff and the government.  The government is
6   agreeing to pay plaintiff a specific sum of money.  It does not
7   -- the agreement does not break out the attorney's fees.  So
8   it's to pay the plaintiff a specific amount of money, and then
9   any amounts that would be paid by the plaintiff for attorney's
10  fees, you know, that would be an agreement that he would
11  have -- or he or she would have with the attorneys.
12            So, you know, my position -- and I -- I -- I've been
13  banging my head over this for months, and -- and my position is
14  there is an agreement.  And if I have to -- you know, I can
15  file a motion to enforce the agreement.  It seems foolish.  But
16  plaintiff -- you know, the government's attorneys said:  This
17  boilerplate agreement, sign it or don't sign it, and with a
18  four o'clock deadline.  He chose to do it, to settle, you know,
19  right before the deadline.
20            So but -- but -- but what's at the core of this is the
21  parties have an agreement.  They have an agreement.  It's
22  between the parties.  And so how do you sign a document for
23  consideration or what have you, I -- the money is being paid to
24  the plaintiff.  It doesn't say anything -- it doesn't say
25  Mr. McKee or his firm gets this or Terry Lowdon gets this

1  amount.
2       THE COURT:  Mr. McKee, I don't -- this doesn't -- you
3  can -- you can make this record without me sitting through it.
4       MR. MCKEE:  Okay.
5       THE COURT:  You're entitled to have your view of what
6  the agreement is or isn't.  I don't have any power on the
7  current record to have any say about that.  And so, as I said,
8  you're free to file whatever motion you think you should file,
9  or not file if you don't want to file them.  But in the absence
10 of a settlement that's fully documented and signed come Monday
11 morning at nine o'clock, I'm going to call the case for trial.
12      MR. MCKEE:  All right.
13      MR. BENSON:  Your Honor, this is Chris Benson.  I -- I
14 promise to be very brief.  May I say one thing on the record?
15      THE COURT:  You may.
16      MR. BENSON:  The procedure for approval of settlement
17 through the Department of Justice is set out in the Code of
18 Federal Regulation.  Anyone can read it.  It works the same way
19 for every single settlement -- every single FTCA settlement we
20 do, and I've settled personally 95 of the cases involving Mark
21 Wisner.  Plaintiff's counsel signed every single one of those.
22      We will work our best to work this out as we hopefully
23 would.  I appreciate you, Your Honor, getting on the phone, and
24 I'm sorry again to take up your time.
25      THE COURT:  It's quite all right.  I thought if there

1   was some way to be of assistance to the parties, I'd render it,
2   but I don't see one.  And all I know in that circumstance is
3   I'll have -- I'll have a tie on Monday and be downstairs in the
4   courtroom ready to hear from you on whatever there is to take
5   up in the case.
6           All right.  I'm going to go ahead and close the record
7   and thank you very much for your appearances.  And, please, if
8   there are any developments that comply with what I've required
9   for this case to be -- for this trial setting to be vacated,
10  please let us know; otherwise, looks like we're charging ahead.
11  Thanks.
12      (Proceedings adjourned.)
13
14
15
16                              CERTIFICATE
17      I certify that the foregoing is a true and correct
18  transcript from the stenographically reported proceedings in
19  the above-entitled matter.
20      DATE:   January 20, 2023
21
22              /s/Kimberly R. Greiner
                KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
                United States Court Reporter
23
24
25